## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marilyn L. Whitmire, | : | CIVIL NO: 3:13-CV-1380 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

**I.      Procedural Background.**

Plaintiff Marilyn Whitmire, through counsel, filed a Complaint on May 22, 2013, appealing the final decision denying her Title II application for disability insurance benefits (DIB) pursuant to 42 U.S.C. §405(g).  (Doc. 1).  On the same day, Plaintiff filed a motion to proceed *in forma pauperis*, which was granted.  (Docs. 2 & 4).

On July 25, 2013, Defendant filed an Answer to Plaintiff's Complaint.   (Doc. 9). Defendant also filed the administrative record.  (Doc. 10).  On October 4, 2013, Plaintiff filed a motion for summary judgment together with a brief in support.  (Docs. 13, 14).  On October, 29, 2013, Defendant filed her brief.  (Doc. 15).  On November 11, 2013, Plaintiff filed a reply. (Doc. 16).

Plaintiff filed her first application for DIB on January 3, 2007.  (Tr. 86).  On February 26, 2007, Plaintiff's first application for DIB was denied at the initial level. (*Id*.).  On April 6, 2007, Plaintiff filed a request for a hearing.  (*Id*.).  On July 26, 2007, Plaintiff withdrew her request for a hearing, and the initial denial became final.  (*Id*.).

On June 3, 2011, Plaintiff filed her second application for DIB alleging an onset date of May 25, 2000, Plaintiff's onset date was amended to February 26, 2007, at the ALJ hearing. (Tr. 17, 105). On July 21, 2011, Plaintiff's second application for DIB was initially denied. (Tr. 87-92, 96-99). On July 28, 2011, Plaintiff filed a request for a hearing. (Tr. 100-01). On May 17, 2012, a hearing was held before ALJ Torres in Wilkes-Barre, Pennsylvania. (Tr. 17). Following the hearing the ALJ denied Plaintiff's second application for DIB in a written decision dated June 14, 2012. (Tr. 17-26). On July 25, 2012, Plaintiff appealed ALJ's ruling to the Appeals Council. (Tr. 11-12). On April 1, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). Plaintiff then filed the instant action in federal court appealing the final decision of Defendant.

## II.    Standard of Review.

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42U.S.C. §423(d)(1)(A).

Furthermore,

[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520(a)(4). As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520.

Before considering step four in this process, the ALJ must also determine the claimant's residual functional capacity (RFC). 20 C.F.R. §404.1520(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm. of SSA*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 22 C.F.R.

§404.1545; SSR 96-8p. In making this assessment, the ALJ considers all of the claimant's impairments, including any medically determinable non-severe impairments. 22 C.F.R. §404.1545(a)(2).

This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requirements. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Once the ALJ has made a disability determination, it is then the responsibility of this court to independently review that finding. In undertaking this task, this court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) to

review the decision of the Commissioner of Social Security denying Plaintiff's claim for disability benefits, Congress has specifically provided that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *see also Johnson v. Commissioner of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)." *Johnson*, 529 F.3d at 200; *see also Pierce v. Underwood*, 487 U.S. 552 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer*, 186 F.3d at 427(*quoting Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason,* 994 F.2d at 1064. However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial

evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

## III.    Disability Evaluation Process.

Both Plaintiff and an impartial vocational expert, Nadine Henzes, testified at the ALJ hearing. (Tr. 17). In her written decision, dated June 14, 2012, ALJ Torres concluded that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2007, and proceeded through each step of the five-step evaluation process. (Tr. 17). The ALJ concluded that Plaintiff was not disabled under 42 U.S.C. § 423(d)(2)(A) during the relevant time period, *i.e.*, February 26, 2007, the amended onset date, through June 30, 2012, the last date insured.

At step one, the ALJ concluded that, Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of February 26, 2007, through her date last insured, June 30, 2007. *See* 20 C.F.R. §§404.1571 *et seq.*; (Tr. 19).

At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: diabetes millitus, hypertension, degenerative joint disease of the right knee, obesity, and bipolar disorder.  *See* 20 C.F.R. §§404.1520(c); (Tr. 20).

At step three, the ALJ concluded that Plaintiff did not have an impairment, or any combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 during the relevant period.  *See* 20 C.F.R. §§404.1520(d), 404.1525, 404.1526; (Tr. 20).

Before moving on to step four of her evaluation, ALJ determined that Plaintiff had the RFC to perform a range of unskilled work at a medium exertional level[1] except that plaintiff can: never climb ladders, ropes or scaffolds; occasionally stoop, crouch, kneel, or crawl; should avoid concentrated exposure to vibration and hazards; and can understand, remember, and carry out simple instructions.  (Tr. 21-24).

At step four, the ALJ found that, through her last date insured, Plaintiff was unable to perform her past relevant work as a certified nurse's aid.[2]  *See* 20 C.F.R. §§404.1565; (Tr. 24).

At step five, the ALJ found that, considering Plaintiff's age (57 on her last date insured), education (high school), work experience, and residual functional capacity, there were a

_____

[1]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary or light work.  22 C.F.R. §404.1567(c).

[2]The VE testified that Plaintiff's past relevant work as a certified nurse's aid is classified by the *Dictionary of Occupational Titles* (DOT) as a semi-skilled position requiring a medium exertional level, however, the VE explained that this position, as performed by Plaintiff, required a heavy exertional level due to the lifting requirements.  (Tr. 24, 79).

significant number of jobs that exist in the national economy which Plaintiff could perform. *See* 20 C.F.R. §§404.1569, 404.1569(a); (Tr. 24-25).

## IV.    Factual Background.

Plaintiff was fifty-seven years old on her alleged onset date, making her a person of advanced age. 22 C.F.R. §404.1563(d). In May 2011, Plaintiff filed an application for DIB alleging disability due to type 2 diabetes, chemical imbalance, high blood pressure, neuropathy in her leg, and a slow acting thyroid. (Tr. 123). While Plaintiff's application for DIB includes several physical impairments which the ALJ concluded were severe, she does not object to the ALJ's evaluation of her physical impairments. Plaintiff's objections only address errors by the ALJ in her evaluation of Plaintiff's mental impairment. Therefore, the following summary does not address the medical records documenting her physical impairments.

### A. Plaintiff's History of Mental Health Treatment.

On January 10, 1996, Plaintiff was admitted to the hospital after her husband filed a petition for involuntary commitment. (Tr. 168). According to her medical records, Plaintiff's husband petitioned to have Plaintiff involuntarily committed after she became increasingly agitated, aggressive and irritable over a three day period, could not sleep, and seemed to be hallucinating and talking to herself. (*Id*.). Upon her admission to the hospital Plaintiff was treated with Lithium, and her condition began to steadily improve. (Tr. 169). After nine days of hospitalization Plaintiff was discharged. (*Id*.). In his discharge summary, Dr. Chun Chang, assessed that "[i]n spite of her chronic psychiatric condition, it sounds that she was a very well functioning person. Also, her condition responded very quickly to the medication, so I believe

that her prognosis is optimistic." (*Id.*).

The discharge summary from Plaintiff's 1996 hospitalization indicates that her husband told the doctors that Plaintiff had a long psychiatric history beginning in 1986. (Tr. 168). Plaintiff's husband told that doctors that Plaintiff's first psychotic episode occurred after having a child when she was admitted Berwick Hospital and treated with Mellaril. (*Id.*). Plaintiff's husband also informed doctors that Plaintiff spent two months in a New York psychiatric hospital in 1991. (*Id.*). Between 1991 and 1996 Plaintiff's mental health issues were controlled with Lithium until 1996 when she told her husband that she no longer wanted to take her medication. (*Id.*). Since 1996, Plaintiff has had no additional mental health treatment, her condition has been controlled with medication prescribed by her family physician. (Tr. 71).

**B. Medical Opinion Evidence**.[3]

In making her decision, the ALJ considered, but afforded little weight to, the opinions of Mark Bohn, M.D., a state agency medical consultant, and Anthony Galdieri, Ph.D., a state agency psychology consultant. (Tr. 87-91). In initially denying Plaintiff's second application for DIB, both doctors concluded that there was insufficient evidence to evaluate Plaintiff's claim. (Tr.

---

[3]Also included in the record is a Psychiatric Review Technique (PRT) form prepared by Elizabeth Hoffman, Ph.D., a state agency psychologist, on February 23, 2007, in connection with Plaintiff's first application for DIB. (Tr. 221-233). Dr. Hoffman assessed Plaintiff's mental impairments in the four broad categories of mental functioning and concluded that Plaintiff had: (1) mild restriction in the activities of daily living; (2) mild restriction in maintaining social functioning; (3) mild difficulty in maintaining concentration, persistence or pace; and, (4) no repeated episodes of decompensation. (Tr. 231). The ALJ concluded that Dr. Hoffman's opinion was not relevant to her decision because it pre-dates Plaintiff's amended onset date of February 26, 2007. (Tr. 23).

89-90).

**C. Plaintiff's Testimony.**

On June 13, 2011, Plaintiff completed a Function Report form. (Tr. 139-146). In this self-assessment of her functional limitations Plaintiff stated that her limitations impact her ability to stand, climb stairs, and walk. (Tr. 144). Plaintiff said that it takes her thirty minutes to get dressed each morning, she needs assistance to get in an out of the bathtub, she is unable to go up an down stairs, uses a cane to walk, and has difficulty walking outside on uneven ground. (Tr. 139-40 ). Plaintiff indicated that she that she spends her days preparing meals, from scratch, doing laundry and dishes, and watching cooking shows on television. (Tr. 139-41). She said that she talks to friends over the phone two to three times per week, and goes to church each week. (Tr. 143).

In the supplemental section of the function report, Plaintiff indicated that she can pay attention through an entire television program, has no difficulty finishing tasks, and has no difficulty following instructions, or handling stress and changes in routine. (Tr. 144-45).

On May 17, 2012, Plaintiff testified at an ALJ hearing. (Tr. 51-83). At the hearing, Plaintiff testified that she was first diagnosed with a chemical imbalance in 1967, after she had a nervous breakdown. (Tr. 60-61). Plaintiff recounted that she was hospitalized again in the 1990's when she was gradually taken off her medications. (Tr. 61). Plaintiff testified that she began taking Lithium to stabilize her condition in 1996, but has not had any kind of mental health treatment since 1996. (Tr. 61-62, 71). At her hearing, Plaintiff affirmed that she had no problems with concentration, forgetfulness, or completing tasks, and had no problems being

10

around crowds. (Tr. 76-77). She also asserted that she could "do things at a regular pace" until November 2011. (Tr. 64).

Plaintiff last worked in 2002, as a certified nurse's assistant in a nursing home. (Tr. 66-67). After she stopped working at the nursing home, she assisted an elderly neighbor for two or three years, and was paid five dollars per visit. (Tr. 68). Plaintiff testified that this work did not require her to lift anything heavier than a small object. (*Id.*). When asked why she waited so long after she stopped working to apply for benefits she responded that she did not apply for benefits because they did not need the money. (Tr. 78). Her husband, however, recently took a pay cut, and she applied for DIB to "help with the bills" and so that she "could have some money to spend" on herself. (*Id.*).

### D. Testimony by the Vocational Expert.

An impartial vocational expert (VE), Nadene Henzes, testified at the ALJ hearing. (Tr. 79-81). The VE testified that Plaintiff's past work as a certified nurse's aide had a medium exertional level, and was semi-skilled, pursuant to the *Dictionary of Occupational Titles* (DOT). (Tr. 79). However, the VE concluded that Plaintiff's employment as a certified nurse's aid was performed at a heavy exertional level, due to increased lifting requirements. (*Id.*).

During her examination of the VE, the ALJ asked whether an individual of Plaintiff's age, education, and experience with the RFC to perform range of work at a medium exertional level, but can never climb ladders, ropes, or scaffolds, can occasionally stoop, crouch, kneel or crawl, must avoid concentrated exposure to vibrations and hazards, and can understand, remember, and carry out simple instruction, is capable of performing Plaintiff's past work. (Tr. 80). The VE

11

answered that such an individual would not be capable of performing Plaintiff's past work as a certified nurse's aid. (*Id.*). The ALJ then asked whether such an individual was capable of performing other jobs in the regional or national economy. (*Id.*). The VE answered that such an individual could work as a bagger, DOT 920.687-14, a hand packer, DOT 920.587-018, and a kitchen worker, DOT 319.677-014. The VE testified that the three positions identified above all unskilled positions, and have a medium exertional level. (*Id.*). The VE also testified that there are 600 positions as a bagger, and 900 positions as a hand packer in northeastern Pennsylvania. (*Id.*).[4]

The ALJ also asked whether a person who was limited to work at a light exertional level, but otherwise had the same characteristics as the first hypothetical, could perform Plaintiff's past work as a certified nurse's aid. The VE responded that such a person would not be able to perform Plaintiff's past work. (Tr. 81). The ALJ did not ask the VE to identify any positions that such a person *could* perform. (*Id.*).

## V.    Discussion.

### A.  The ALJ's Hypothetical Adequately Conveys Plaintiff's Mental Limitations.

Plaintiff challenges the ALJ's conclusion that Plaintiff had the RFC to perform unskilled work at a medium exertional level except that plaintiff can: never climb ladders, ropes or scaffolds; occasionally stoop, crouch, kneel, or crawl; should avoid concentrated exposure to vibration and hazards; and can understand, remember, and carry out simple instructions. (Tr.

---

[4]The VE did not testify as to the number of kitchen worker positions in the northeastern Pennsylvania statistical area.

21-24).    In step three of her analysis, the ALJ found that Plaintiff was moderately limited in her

ability to maintain concentration, persistence, and pace, and had mild limitations in the area of

social functioning.   In order to properly assess a Plaintiff's an ALJ must consider all "medically

determinable impairments," including those impairments that are not severe.    20 C.F.R.

§404.1545(a)(2).  Plaintiff argues that the ALJ's RFC assessment is inadequate because it fails to

address the mental limitations she identified in step three of her sequential analysis with

sufficient detail, and therefore, the testimony of the VE in response to the ALJ's hypothetical

question, based on the erroneous RFC assessment, does not constitute substantial evidence

supporting the denial of her application for DIB.  *See Burns v. Barnhart*, 312 F.3d 113, 123 (3d

Cir. 2002)("Where there exists in the record medically undisputed evidence of specific

impairments not included in a hypothetical question to a vocational expert, the expert's response

is not considered substantial evidence.").

        In support of her argument, Plaintiff points to the Third Circuit decision *Ramirez v.

Barnhart*, 372 F.3d 546 (3d Cir. 2004).  In *Ramirez*, a plaintiff's applications for DIB and SSI were

denied by an ALJ, for the second time, following a remand by the Appeals Council.  On appeal,

Ramirez argued that the hypothetical question posed to the VE by the ALJ did not adequately

incorporate the ALJ's findings in the attached PRT form.[5]    *Id.*   The ALJ's decision in *Ramirez*

indicated that Ms. Ramirez "often" experienced "deficiencies of concentration, persistence, or

pace resulting in a failure to complete tasks in a timely manner (in work settings and

---

        [5]Under the then-existing Social Security Regulations, a PRT form had to be completed
by the ALJ and attached to all decisions in cases where a claimant alleged a mental health
impairment.

elsewhere)."[6] *Id.* at 552. During Ms. Ramirez's hearing, the ALJ posed a hypothetical where the VE was directed to assume that an individual could perform "no more than simple one or two-step tasks." *Ramirez*, 372 F.3d at 554. Ultimately, the court concluded that the VE's hypothetical failed to adequately address Ms. Ramirez's limitations.

It is well-settled that an ALJ's RFC assessment must include a discussion of the individual's abilities. *Id.*; 20 C.F.R. § 404.1545; *Hartranft*, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."). Generally, an individual's RFC compliments the functional evaluation necessary for paragraphs B and C of the listings analyzed in step three by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when an impairment is severe, but neither meets nor equals a listed impairment. 20 C.F.R., part 404, subpart P, appendix 1, 12.00A. In this case, however, the ALJ's apparent generosity in affording Plaintiff "the full benefit of the doubt," in her step two and three analysis resulted in a finding that Plaintiff has mild and moderate mental limitations, which, the ALJ concluded based on Plaintiff's testimony, do not have any identifiable impact upon her functional ability.

------

[6]In 2000, the Social Security regulations pertaining to mental impairments were revised, and the evaluation of the functional area of concentration, persistence, and pace was changed from the five-point "frequency" scale (*i.e.* never, seldom, often, frequent, and constant), applicable to the *Ramirez* decision, to a five-point "severity" scale (*i.e.* none, mild, moderate, marked, and severe). *See Colon v. Barnhart*, 424 F.Supp2d 805, 811-12 (E.D.Pa. 2006); *See also Dynko v. Barnhart,* No. 03-CV-3222, 2004 WL 2612260, at *5, n. 34 (E.D.Pa. Nov. 16, 2004)(noting that 'often' and 'moderate' fall on the same point on the five point continuum, and *may* be considered roughly equivalent).

Moreover, we find the Third Circuit's decision in *Ramirez* distinguishable from the instant case. In *Ramirez*, the court observed that there may have been a valid explanation for the omission of a more detailed description of the claimant's mental limitation from the ALJ's hypothetical. *Ramirez*, 372 F.3d at 555. The court noted that "the ALJ may have concluded that the deficiency in pace was so minimal or negligible that, even though Ramirez 'often' suffered from this deficiency, it would not limit her ability to perform simple tasks under a production quota," but found that the record seemed to suggest otherwise. *Id*. The instant case presents the opposite situation, the record suggests that even though Plaintiff suffers from a moderate deficiency in the areas of concentration, persistence, and pace, and a mild deficiency in the area of social functioning, these limitations did not effect her ability to function in any discernable fashion during the relevant period. In the similar case of *Whack v. Astrue*, the court ordered that a case be remanded where an ALJ's hypothetical did not sufficiently incorporate a claimant's medically established limitations, despite the conclusion that substantial evidence of record indicated that the claimant was "far from disabled." No. 6-CV-4917, 2008 WL 509210 *9 (E.D.Pa. Feb. 26, 2008). In reaching this conclusion, the court in *Whack* also recognized that, in some situations, an ALJ may have a valid explanation for such an omission from a hypothetical. *Id*. The court observed that the ALJ "may have determined that although Plaintiff had a moderate limitation in concentration, persistence and pace for purposes of the listings analysis, it would not have an effect on his vocational ability to perform simple, routine, one-to-two-step tasks," but ultimately concluded that remand was necessary because the ALJ provided no such explanation in that case. *Id*.

15

In the present case, in determining that Plaintiff had the RFC to "understand, remember and carry out simple instructions," the ALJ relied heavily on Plaintiff's own testimony that she had no difficulty concentrating or finishing tasks. The ALJ also noted that Plaintiff professed to no difficulty in social situations, was active in her church, and was comfortable around crowds. Thus, we find that the ALJ's analysis offers a sufficient explanation for the stated omission, and that the ALJ's analysis was supported by the administrative record as a whole.

Accordingly, we find that the ALJ's hypothetical adequately conveyed Plaintiff's functional limitations, and that her decision that Plaintiff could perform a significant number of jobs in the national economy was based on substantial evidence.

### B. The ALJ's Decision That There Were A Significant Number of Jobs in the National Economy That Plaintiff Could Perform Is Based On Substantial Evidence.

Plaintiff argues that the ALJ's reliance on the VE's testimony was flawed, because that testimony relied on job descriptions contained in the DOT, a resource she claims is outdated and unreliable. Moreover, Plaintiff contends that the updated job descriptions in the Occupational Information Network ("O*Net") for the positions of bagger, hand packer, and kitchen helper are entirely inconsistent with the ALJ's assessment that Plaintiff could perform only unskilled work.[7] The Sixth Circuit Court of Appeals dealt with a similar objection to the reliability of the

---

[7]Specifically, Plaintiff contends that the positions of "bagger," and "hand packer" identified by the VE as unskilled positions based on the DOT have an SVP of 4-6 in the O*Net, and therefore are semi-skilled positions, and the position of "kitchen helper" has an SVP of less than 4 in O*Net, and therefore can be performed as an unskilled or semi-skilled position. *See* SSR 82-41; (Doc. 14 p. 17).

aging DOT, which has not been updated since 1991,[8] in *Cunningham v. Astrue,* and reasoned

that:

> While the Social Security Commissioner does take administrative notice of this document when determining if jobs exist in the national economy, 20 C.F.R. §404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted....In light of the fact that more current job descriptions were available at the time of the hearing before the ALJ-the Department of Labor replaced the DOT with the Occupational Information Network (O*Net), a database that is continually updated based on data collection efforts that began in 2001 – and that the two descriptions relied on by the VE are not found in O*Net, we conclude that the VE's dependence on the DOT listings alone does not warrant a presumption of reliability.

*Cunningham v. Astrue*, 360 F. App'x 606, 615-616 (6th Cir. 2010).

In *Cunningham*, the Court remanded the case for "consideration of whether the DOT

listings...were reliable in light of the economy as it existed at the time of the hearing before the

ALJ." *Id. at 616.* In *Cunningham*, however, the Court questioned the reliability of the DOT only

because the job descriptions identified by the VE were completely *absent* from the O*Net. *Id.*

at 616. The instant case is clearly distinguishable from *Cunnigham* since all three job descriptions

identified by the VE are present in both the DOT, and O*Net.

In assessing the reliability of the DOT, some courts have observed that the Office of

Administrative Law Judges of the United States Department of Labor's website states that DOT

has been replaced by O*Net. *See Livestock v. Astrue*, No. 11-CV-0678, 2013 WL 183710, at

*12 (N.D.Okla. Jan. 17, 2013); *Nottoli v. Astrue*, No. 09-CV-609, 2011 WL 675290, at *7 n.

---

[8]Dictionary of Occupational Titles (4th ed., 1991), *available at* http://www.oalj.dol.gov/LIBDOT.HTM

6 (E.D.Cal. Feb. 16, 2011). While others note that the Social Security Administration has not adopted the O*Net for disability cases. *See Rodriguez v. Astrue*, No. 10-CV-636, 2012 WL 552713, at *3 (D.Ariz. Feb 21, 2012)(recognizing a 2010 report by the Occupational Information Development Advisory Panel requested by the SSA which concluded that O*Net was not suitable for disability adjudication). Others refuse to consider job descriptions from O*Net because O*Net is not identified as a source of reliable job information in the social security regulations. *See* 20 C.F.R. §404.1566(d);[9] *See e.g. Hayes v. Comm'r of Soc. Sec.*, No. 1:09-CV-1107, 2011 WL 2633945, at *11 (W.D.Mich. June 15, 2011), *report and recommendation adopted by* 2011 WL 2633846 (W.D.Mich. July 5, 2011). However, even if we were to find that the job descriptions from O*Net were controlling here, there is some debate as to whether a reviewing district court should rely upon, or even reference, O*Net when it was not part of the evidence contained in the administrative record. *See Petty v. Astrue*, No. 2:12-CV-324, 2013 WL 3466851 at *12 (E.D.Tenn. Jul. 10, 2013)(finding that it may not be proper to consider job descriptions from O*Net where the information was not before the ALJ, not discussed during an administrative hearing, and not referenced in the record).

---

[9]When we determine that unskilled, sedentary, light, and medium jobs exist in the national economy ..., we will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of –
    (1) Dictionary of Occupational Titles, published by the Department of Labor;
    (2) County Business Patterns, published by the Bureau of the Census;
    (3) Census Reports, also published by the Bureau of the Census;
    (4) Occupational Analyses, prepared for the Social Security Administration by various State employment agencies; and
    (5) Occupational Outlook Handbook, published by the Bureau of Labor Statistics.
20 C.F.R. §404.1566(d).

We find  Plaintiff's invitation to abandon the VE's testimony regarding the DOT job descriptions in favor of those found in O*Net unappealing, in large part, due to a lack of clarity as to whether the Commissioner considers O*Net a reliable resource.  Further, we find that it may not be proper to consider the O*Net job descriptions as the information was not before the VE or ALJ, not discussed during Plaintiff's hearing, and is not a description of which the Commissioner may take administrative notice.   Accordingly, for the foregoing reasons we find that the VE's testimony constitutes substantial evidence, and that the ALJ's findings based on the VE's testimony is supported by substantial evidence.

**VI.      Recommendation.**

Based on the foregoing, **IT IS RESPECTFULLY RECOMMENDED THAT** Plaintiff's appeal from the final decision of the Commissioner of Social Security, (Doc. 1), for disability insurance benefits be **DENIED**.


 **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: January 14 2014**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Marilyn L. Whitmire, | : | CIVIL NO: 3:13-CV-1380 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

_____ **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **January 14, 2014.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

_____

_____Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.


_____        **s/ Thomas M. Blewitt**
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**



**Dated: January 14, 2014**